**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **FINN CORPORATION** | : | Case No. 1:25 CV 418 |
| 9281 LeSaint Drive | : | |
| Fairfield, Ohio 45014, | : | Judge |
| | : | |
| **EXPRESS BLOWER INC.** | : | |
| 9281 LeSaint Drive | : | |
| Fairfield, Ohio 45014, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | **COMPLAINT** |
| v. | : | |
| | : | |
| **PRECISION MACHINE &** | : | |
| **MANUFACTURING, INC.** | : | |
| 1290 S. Bertelsen Road | : | |
| Eugene, Oregon 97402 | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

Now come Plaintiffs, Finn Corporation ("Finn") and Express Blower Inc. ("Express Blower") (collectively "Plaintiffs"), by and through counsel, and for their Complaint against Precision Machine & Manufacturing, Inc. ("PMM"), allege and state as follows:

**PARTY IDENTIFICATION AND JURISDICTION**

1. Plaintiff Finn is a corporation organized and existing under the laws of the state of Ohio with a principal place of business in Ohio.

2. Plaintiff Express Blower is a corporation organized and existing under the laws of the state of Ohio with a principal place of business in Ohio.

3. Defendant PMM is a corporation organized and existing under the laws of the state of Oregon with a principal place of business in Oregon.

1

4. This Court has subject matter jurisdiction over the claims in this case because the controversy is between citizens of different states and the amount in controversy exceeds $75,000.

5. This Court also has subject matter jurisdiction over the claims in this case because Count Three of this Complaint states a claim under federal law, giving rise to federal question subject matter jurisdiction.

6. This Court has specific personal jurisdiction over PMM because PMM purposefully availed itself of the state of Ohio by contracting with companies with their principal place of business in Ohio, and because PMM breached the contracts at issue here through actions aimed at Ohio.

7. Venue is proper in this Court because, among other reasons, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in and/or were directed at Plaintiffs located within this judicial district, which is where Plaintiffs' corporate headquarters are located. Further, one or more representatives of PMM have personally visited this judicial district for purposes of conducting business with one or more of the Plaintiffs.

## FACTS COMMON TO ALL COUNTS

8. Plaintiffs incorporate the preceding allegations as if fully rewritten here.

9. In 1935, Charles Finn invented a revolutionary machine that chopped and applied straw for mulching freshly seeded soil to protect it from rain and wind erosion. Based just north of Cincinnati, Ohio, his idea and small shop were the catalysts for a new industry of labor-saving equipment in the soil and ground preservation space. Following the straw blower, Finn invented the first hydroseeder in 1953. This machine was a highly efficient way to spray seed and fertilizers over broad areas.

10. In 1993, Finn received a patent on the original-designed Bark Blower. Finn was, has been, and is the first, trusted, and best in this product offering and machine category.

11. Today, customers still look to Finn for equipment of superior performance and quality. They trust Finn because of its experience and commitment to being their project solution and because of Finn's comprehensive product support. Finn prides itself on manufacturing hydroseeders, bark blowers, and straw blowers that give customers the ability to work more profitably by completing more jobs at less cost. Finn has a worldwide presence with more than 175 dealer and service locations in North America, Australia, South America, Africa, and Europe.

12. Express Blower is a wholly-owned subsidiary of Finn.

13. Express Blower is the world's leading manufacturer and distributor of large pneumatic blowing equipment. Invented more than 75 years ago, Express Blower owners provide material delivery and installation to the erosion control, green roof, construction, landscape, playground and agricultural industries. strive to provide superior equipment and customer support to their customers. Express Blower remains the leader and the innovator in the blower truck industry. Its experience in the manufacture, operation, and business aspect of the industry sets Express Blower apart. Express Blower trucks are capable of spreading a wider range of products for a wider variety of applications than any other blower trucks on the market today.

14. Express Blower provides factory-direct sales to allow customers to work directly with the people who know blower trucks and the business best. Express Blower also provides dedicated and knowledgeable parts and service staff available to help customer maintain productivity, as well as an extensive parts inventory for rapid delivery.

15. Throughout its existence, Finn has also expended considerable resources in establishing a brand under its name, consistently promoting its products under the Finn name and

developing the brand to where consumers instantly recognize the name "Finn" as an indicator that Finn is the source of those products.

16. From these activities and the consuming public's recognition of the Finn name, Finn has cultivated strong common law trademark rights in the name "Finn," as used in connection with blower and hydroseeder products.

17. In fact, Finn and Express Blower's name are so synonymous with their products that, as the only producer of such machines in the industry, consumers and those in the commercial landscaping industry understand the term "blower truck," to refer to a product of Express Blower and Finn.

18. Plaintiffs also possess a number of related trademark registrations, including, but not limited to the following: EXPRESS BLOWER (U.S. Reg. No. 2857862), TERRASEEDING (U.S. Reg No. 2741024), the EXPRESS BLOWER design logos (U.S. Reg. No. 2417448), the HYDROSEEDER design logo (U.S. Reg. No. 697083), FINN LANDFILL SOLUTIONS (U.S. Reg. No. 3118154), and the FINN design logo (U.S. Reg. Nos. 1176903 and 1287524).

19. PMM began as a small machine shop. PMM now markets itself as a manufacturer of parts such as rotary airlock feeders, rotary valve airlocks, and screw conveyors for industrial manufacturing operations in various industries.

20. Finn and Express Blower selected PMM as a vendor to supply components for their blower truck product lines, subject to Finn and Express Blower's designs. Specifically, PMM was selected to manufacture rotary feeders for Finn and Express Blower's blower truck product lines.

21. After prior, limited business dealings between Express Blower and PMM, the parties began discussing this business relationship in approximately 2015, with new leadership at PMM representing PMM in those discussions.

4

22. On or about February 8, 2016, Finn, Express Blower, and PMM entered into a Memorandum of Understanding ("MOU") to establish terms under which PMM would provide rotary feeders for Finn and Express Blower's blower truck product lines. A true and correct copy of the MOU is Exhibit 1 to this Complaint.[1]

23. Pursuant to the terms of the MOU, PMM agreed that "[u]pon commencement of the business relationship" with Finn and Express Blower, PMM would "withdraw from the business of supplying feeders into the blower truck aftermarket." (Exhibit 1 at pg. 3.)

24. PMM further agreed that it would "remove references to blower truck feeders from its website, brochures, and other marketing materials" and "direct any customer inquiries that it receives" to Finn and Express Blower. (Exhibit 1 at pg. 3.)

25. The parties agreed that, so long as they were both satisfied with the business relationship and the annual minimum volume was met, as established in the MOU, PMM would "stay out of the blower truck feeder aftermarket and not compete with Finn and [Express Blower] for blower truck feeder sales, parts sales, service, or rebuilding." (Exhibit 1 at pg. 3.)

26. The parties further agreed that "[i]f the working relationship between the companies ever comes to an end, [PMM] commits to remaining out of the aftermarket business for a minimum of two years following the date of its last shipment." (Exhibit 1 at pp. 3-4)

27. Finally, both parties agreed "to protect the confidentiality of the designs, the pricing, volumes, and any other information about their business relationship with the same care that they safeguard other information about their respective businesses." (Exhibit 1 at pg. 4.)

---

[1] However, because the MOU contains certain information regarding pricing, volumes, and other topics that the parties to the MOU agreed they would keep confidential, Plaintiffs are filing a Motion for Leave to File Under Seal as to the MOU, and will submit the MOU as appropriate under that procedure.

5

28. The MOU was duly executed by Matt Day, Vice President of Operations for Finn and Express Blower at the time, and Kirk Morton, President of PMM at the time. (Exhibit 1 at pg. 4.)

29. Additionally, on or about February 9, 2016, Plaintiffs entered into a "Non-Disclosure/Confidentiality Agreement" ("NDA") with PMM. The NDA clearly identifies PMM as the "Recipient" of Plaintiffs' proprietary information, provided for the "Purpose" of "preparing an estimate (or engaging in discussion) or creation of documentation for any potential Services, Supplies, Products, Equipment, or modification of Products or Equipment."

30. In the NDA, PMM agreed that it would (a) not use or duplicate Plaintiffs' proprietary information for any reason beyond the Purpose; (b) protect and keep Plaintiffs' proprietary information in confidence; (c) only disclose Plaintiffs' proprietary information to its employees and agents on a need-to-know basis; and (d) not reverse engineer any products (hardware or software) received from Plaintiffs.

31. The NDA also was duly executed by Mr. Day and Mr. Morton.

32. After signing the MOU and NDA, PMM began to supply Finn and Express Blower with rotary feeders for their blower trucks, which were manufactured using Finn and Express Blower's designs.

33. Finn and Express Blower have continued to make at least the required minimum purchases from PMM for each calendar year, in accordance with the MOU. Typically, the amount of purchases each calendar year have greatly exceed the required minimum amount.

34. However, Plaintiffs have recently learned that PMM has been marketing and selling in the aftermarket what PMM is holding out as "OEM" replacement parts for Finn and Express Blower machines. To market and sell these parts, which PMM manufacturers, PMM has been

using Finn's name explicitly, as well as phrases that can refer only to Finn and Express Blower's products, such as "blower truck," without Finn's permission or authorization.

35. PMM's unauthorized advertisements for these aftermarket replacement parts, which have so far been placed on social media outlets, are accompanied by images of Finn and Express Blower's products. A true and correct copy of one such example is attached as Exhibit 2.

36. In Exhibit 2, PMM directs the advertisement to "all Finn Blower Truck Customers" and asserts that PMM is providing them "direct aftermarket access" to "Blower Truck Rotary Feeders and Parts" and that such parts are being provided "factory direct" and are "brand new factory" parts.

37. Exhibit 2 also shows additional instances of PMM's use of Finn's name to advertise and promote its unauthorized aftermarket products.

38. PMM did not inform Finn and Express Blower at any point that PMM was intending to or had begun using their companies' trademarks for PMM's own profit. Nor did PMM inform Finn and Express Blower at any point that PMM was intending to or had begun offering for sale replacement parts for Finn and Express Blower machines.

39. Finn and Express Blower never gave PMM permission or authorization to sell in the aftermarket or use their trademarks to sell in the aftermarket the blower truck parts that PMM has made specifically for Finn and Express Blower over the years, using Finn and Express Blower designs.

40. Upon information and belief, due to PMM's marketing and attempts to sell these products, there is significant risk that any purchasers of PMM's parts will believe they are purchasing blower truck replacement parts authorized by Finn and Express Blower to be sold in the aftermarket by PMM.

7

41. By marketing and selling Finn and Express Blower replacement parts in the aftermarket, PMM has breached its contractual obligations to Finn and Express Blower.

42. Soon after learning this information regarding PMM's conduct, Finn and Express Blower sent PMM a cease and desist letter on May 15, 2025. Therein, Finn and Express Blower demanded that PMM cease and desist in selling in the aftermarket and in using Finn and Express Blower's name, product names, and other intellectual property as described above.

43. PMM has refused to comply with Finn and Express Blower's cease and desist letter and are knowingly and intentionally continuing to violate Finn and Express Blower's rights and the terms of the MOU.

## COUNT ONE
## BREACH OF CONTRACT
**(Memorandum of Understanding)**

44. Plaintiffs incorporate the preceding allegations as if fully rewritten here.

45. Finn, Express Blower, and PMM entered into the MOU freely and without duress.

46. The MOU constitutes a valid and legally enforceable contract that Finn and Express Blower are entitled to enforce, because they have at all times complied with their obligations under the MOU. However, due to PMM's breaches as described further below, PMM has waived and cannot seek to enforce any alleged rights that PMM may claim to have under the MOU.

47. In exchange for PMM's commitment to be bound by the MOU, Finn and Express Blower provided PMM with adequate and sufficient consideration, including access to Finn and Express Blower's confidential information, processes, and designs, and making at least the minimum purchases from PMM for each calendar year. As a result, PMM's business grew and Finn and Express Blower, upon information and belief, became PMM's largest customers.

48. Finn and Express Blower fully performed their obligations under the MOU.

49. PMM has breached the MOU by, among other things, marketing and selling Finn and Express Blower replacement parts in the aftermarket (including those that PMM is holding out as "OEM" replacement parts) and using Finn and Express Blower's confidential and proprietary designs for its own benefit.

50. As a direct and proximate cause of PMM's breaches of the MOU, described above, Finn and Express Blower have suffered monetary damages in an amount to be proven at trial, exceeding $75,000.

51. Monetary damages alone will not be sufficient to remedy all of the harm caused to Finn and Express Blower by PMM's breach of the MOU. As a direct and proximate result of PMM's conduct, Finn and Express Blower have suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.

52. Finn and Express Blower also are entitled to injunctive relief to prevent any such further unlawful conduct.

## COUNT TWO
## False Designation of Origin (15 U.S.C. § 1125(a))

53. Plaintiffs incorporate the preceding allegations as if fully rewritten here.

54. Finn and Express Blower have the exclusive rights to use and exploit their Image Rights which serve as distinctive trademarks within the meaning of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), and which are used as trademarks in interstate commerce for Finn and Express Blower's professional products and services and identify Finn and Express Blower as the exclusive source of services offered thereunder (the "Marks").

55. The Marks have been in use for many years and play a prominent role with respect to the marketing and advertising of Finn and Express Blower's products and services. The Marks have gained widespread recognition in Finn and Express Blower's industry.

56. The Marks were distinctive and well-known long before PMM began using unauthorized reproductions of the Marks to sell Finn and Express Blower's blower truck replacement parts for its own personal gain.

57. PMM has infringed these rights by using the Marks in connection with its own personal sales of products created using, at least, Finn's name in advertising and promoting its unauthorized aftermarket products. PMM has done so without Finn's permission.

58. PMM's acts constitute trademark infringement, false designation of origin, false or misleading representation, false advertising, and false or misleading description which: (a) is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, right to use, or association of PMM with Finn and Express Blower and as to the origin, sponsorship, or approval of PMM's products, services, and commercial activities by Finn and Express Blower; and (b) in commercial advertising or promotion, misrepresent the nature, characteristics, qualities, or origin of Finn and Express Blower's products, services, or commercial activities and/or Finn and Express Blower's authorized products, services, or commercial activities.

59. PMM's actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). As a result of PMM's unlawful acts, PMM has been unjustly enriched, and Finn and Express Blower have been damaged.

60. PMM's unlawful activities have caused, and, unless enjoined by this Court, will continue to cause irreparable injury and other damage to Finn and Express Blower in terms of its business, reputation, and goodwill in the Marks. Finn and Express Blower have been damaged and believe they will continue to be damaged by PMM's false descriptions and representations through direct diversion of sales and/or through a lessening of goodwill associated with the Marks. PMM's acts also negatively impact Finn and Express Blower's standing and reputation in the industry by

associating the company with PMM's inferior brand equity. Finn and Express Blower have no adequate remedy at law.

61. PMM's actions make this an exceptional case under 15 U.S.C. § 1117(a). Finn and Express Blower are entitled to, and hereby seek, an award of attorneys' fees and costs, pursuant to 15 U.S.C. § 1117(a).

## COUNT THREE
### Common Law Trademark Infringement

62. Plaintiffs incorporate the preceding allegations as if fully rewritten here.

63. The acts and omissions of PMM, as set forth above, including in Paragraphs 16 through 33, constitute common law trademark infringement.

64. PMM, through the acts and omissions described above, have used and continue to use, in commerce words, terms, names, symbols, and devices which are confusingly similar to those of Finn and Express Blower, in a manner that is likely to cause confusion, including reverse confusion, or mistake or to deceive as to the affiliation, connection, or association of PMM with Finn and Express Blower, or as to the origin of PMM's goods or services or other commercial activities, or as to the sponsorship or approval of PMM's services or other commercial activities by Finn and Express Blower.

WHEREFORE, Plaintiffs pray for the following relief:

  A. Temporary, preliminary, and permanent injunctive relief;

  B. Judgment against PMM for compensatory damages, punitive damages, costs, and attorney's fees; and

  C. Such other relief as the Court deems appropriate.

Respectfully submitted,

DINSMORE & SHOHL LLP

*/s/ Matthew J. Bakota*
Matthew J. Bakota (0079830)
Emily M. Snively (0104656)
1 South Main Street, Suite 1300
Dayton, Ohio 45402
Phone: (937) 449-6400
Fax: (937) 449-2836
matthew.bakota@dinsmore.com
emily.snively@dinsmore.com

Michael A. Xavier (0097121)
1775 Sherman St., Suite 2600
Denver, CO 80209
Phone: (303) 296-3996
michael.xavier@dinsmore.com

*Attorneys for Plaintiffs*